597 So.2d 60 (1992)
Ollizo RICHARD and Betty Richard
v.
BORDEN INC., Borden Chemical, a Division of Borden Inc., Illinois Central Gulf Railroad Company, Pala-Interstate, Inc., Pala Inc., and United States Fidelity and Guaranty Insurance Company.
No. CA 91 0092.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Rehearing Denied May 6, 1992.
*61 Vincent J. DeSalvo, Baton Rouge, for plaintiff.
Daniel S. Kelly, New Orleans, for Illinois Cent. R.R.
Eugene R. Groves, Baton Rouge, for Borden, Inc.
James L. Donovan, Metairie, for Pala, Inc., et al.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
EDWARDS, Judge.
On August 6, 1987, Ollizo Richard worked for Illinois Central Railroad (IC). He was part of a train crew that switched *62 cars in the Borden, Inc. (Borden) plant in Geismar, Louisiana. As Mr. Richard climbed aboard a moving railroad car, a routine part of his job, one of the doors of an air compressor located near the railroad track opened, striking and injuring Mr. Richard.
Before the accident, Borden had contracted with Pala, Inc. (Pala) for renovations in the plant. In renovating the silos located in the Borden plant, Pala used air compressors for sandblasting. The air compressors were located near a sidetrack used by IC to switch railroad cars. Pala had the responsibility of latching the compressor doors securely at the end of the daily sandblasting activity. On the day of the accident, the doors had not been properly latched.
Mr. Richard and his wife filed suit against IC, Borden, Pala, and Pala's insurer, United States Fidelity and Guaranty Company. Pala filed a cross-claim against IC for contribution. IC filed a cross-claim against Borden that sought full indemnification and attorney's fees from Borden under the provisions of a sidetrack agreement between Borden and IC.
Based on the provisions of the construction contract between Pala and Borden, Borden called on Pala to indemnify and defend Borden against the main demand and the claim made by IC pursuant to the sidetrack agreement. Pala and its insurer agreed to indemnify and defend Borden on the main demand, but refused to indemnify or defend Borden against the claim by IC. Because of the refusal by Pala to indemnify or defend Borden against the claim by IC based on the sidetrack agreement, Borden filed a cross-claim against Pala seeking full indemnification from Pala and the expenses and attorney's fees incurred by Borden in defending the IC claim.
The plaintiffs settled with Pala and its insurer leaving only the cross-claims for resolution by the trial court. The parties agreed to submit the matter to the trial court on the depositions, exhibits, and stipulations between the parties. The parties reserved the right to object to any contested submissions.
The trial court ruled various contested submissions admissible, granted IC's cross-claim against Borden, denied Borden's cross-claim against Pala, and apportioned fault as follows:
1. Borden was 10% at fault,
2. IC was 20% at fault, and
3. Pala was 70% at fault.
Borden filed a motion for a new trial, which was denied by the trial court. Borden suspensively appealed. Pala and IC filed devolutive appeals. We affirm.
Borden complains of the trial court's failure to recognize its right to indemnification and defense from Pala on the claim made by IC based on the Borden-IC sidetrack agreement, the trial court's grant of the IC cross-claim against Borden for indemnification and attorney's fees, and the apportionment of fault. IC argues that it was free from actionable fault. Pala, on the other hand, argues that the assessment of only 20% of the fault to IC was too low.

STANDARD OF REVIEW
Although the matter was submitted to the trial court without live testimony or presentation to a jury, the manifest error standard of review for the appellate court remains the same. "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." (emphasis omitted) Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La.1987) (quoting Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973)).

APPORTIONMENT OF FAULT
Borden filed, in this court, a motion to expunge all of the contested submissions. It is unnecessary for us to rule on this motion. The record, excluding the objected to material, contains more than sufficient evidence to support the trial court's apportionment of fault.
*63 The trial court, in its reasons for judgment, did not articulate its basis for the assigned percentages of fault. However, the record supports the finding by the trial court that the three defendants, Borden, Pala, and IC, contributed to the accident in varying degrees.
Pala and Borden agreed upon the placement of the air compressor near the railroad track. The placement of the compressor so close to the track reduced any margin of safety for the train crew when they passed by the compressor. When the doors of the compressor were open, a man riding on the side of the railroad car nearest the compressor could not safely pass. Borden admitted that the compressor was placed within eight and one-half feet of the center of the track, in violation of an agreement between IC and Borden covering the location of objects near the track.
Numerous complaints that the compressor was located too close to the track and that the doors of the compressor were left open were made by the train crew to IC. Pala and Borden were made aware of the complaints. One of the reasonably foreseeable dangers of a close placement was the risk created when the doors were left open. This was the very problem previously experienced by the crew and the problem that resulted in the accident.
Pala, Borden, and IC had a duty not to create a hazardous workplace. The failure to place safely or to relocate the compressor, in light of the availability of another viable location and the ease of moving the compressor, was unreasonable behavior under the circumstances and resulted in a breach of the duty; a breach that caused the accident. The risk encountered was foreseeably within the scope of the duty owed. It was reasonably foreseeable that the doors might be left open and that, because of the close placement of the air compressor, an undue risk would be created. See generally Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1155-56 (La.1988) (for duty-risk analysis).
Pala's fault was the greatest because of its placement of the air compressor and its failure to latch properly the doors at the time of the accident. However, the negligent actions, and failure to act, of IC and Borden were contributory causes. We find no manifest error on the part of the trial court in its assignment of percentages.

INDEMNIFICATION AGREEMENT BETWEEN PALA AND BORDEN
Borden argues that the following provision in the contract between Pala, the contractor, and Borden grants to Borden the right of indemnification and the right of a defense by Pala against the cross-claim filed by IC:
B. Indemnity
Contractor agrees to indemnify, defend and save [Borden] (including officers, directors, employees and agents of [Borden] ) harmless from and against any and all claims, suits and liabilities based upon damage to, or destruction of any property or injury to any person (including death) arising out of or attributable to the presence of Contractor, its employees, subcontractors or agents or property upon the premises of [Borden] or the performance or nonperformance by Contractor (including, but not limited to, Contractor's employees, subcontractors, or agents) of the work to be performed here under including but not limited to injuries or damages caused solely or in part by the negligence of [Borden]. In the event that employees of [Borden], or any tools, equipment, improvements or other property on or about [Borden's] facilities are used by Contractor (including, but not limited to, Contractor's employees, subcontractors, or agents) irrespective of who pays said employees and regardless of whether rental or other consideration is paid for the use of said tools, equipment, improvements or other property, Contractor agrees to indemnify, defend and save [Borden], (including officers, directors, employees, and agents of [Borden]) harmless from and against any and all claims, suits and liabilities arising out of, incident or pertaining to the receipt, custody and/or use of said employees, tools, equipment, improvements *64 or other property of [Borden], including injuries or damages caused in whole or in part by the negligence of [Borden].
The general rules of contract interpretation apply to contracts of indemnity. Soverign Insurance Company v. The Texas Pipe Line Company, 488 So.2d 982, 984 (La.1986). A contract is interpreted by determining the common intention of the parties. LSA-C.C. art. 2045. If the words of the contract are clear, no further interpretation of the contract should be made in search of the parties' intent. LSA-C.C. art. 2046. A contract must be interpreted to cover only things intended to be covered by the parties, even if the contract provisions are expressed in general terms. LSA-C.C. art. 2051.
Nothing in the indemnity agreement supports the claim that the parties intended for Pala to indemnify Borden for the consequences of the negligent acts of IC or any other unnamed third party that Borden had agreed to indemnify or may agree to indemnify in the future, without the knowledge or consent of Pala. Such an interpretation of the indemnity clause would lead to absurd consequences. Certainly IC's negligence contributed to the injury to Mr. Richard, but IC's claim against Borden for indemnification is based on the sidetrack agreement between Borden and IC, not the injury to Mr. Richard.
For these reasons, we find no error in the trial court's interpretation of the Pala Borden agreement. Because the claim for indemnification and defense by Pala against the IC cross-claim was properly denied, Borden's claim for its own expenses and attorney's fees for the defense of that claim also fails.

IC SIDETRACK AGREEMENT
Borden argues that the provisions of the sidetrack agreement are not in conflict and that section 4 of the agreement applies to the specific situation involved in this case; a situation of joint and concurring negligence. Alternatively, if sections 4 and 7 of the agreement are in conflict, section 4 controls.
The sidetrack agreement provided, in part, as follows:
4. It is understood that the movement of railroad locomotives involves some risk of fire, and [Borden] assumes all responsibility for and agrees to indemnify [IC] against loss or damage to property of [Borden] or to property upon its premises, regardless of railroad negligence, arising from fire caused by locomotives operated by [IC] on the Track, or in its vicinity, for the purpose of serving [Borden], except to the premises of [IC] and to rolling stock belonging to [IC] or to others, and to shipments in the course of transportation.
[Borden] also agrees to indemnify and hold harmless [IC] for loss, damage or injury from any act or omission of [Borden], its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about the Track. If any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.
7. [Borden] shall not erect or maintain, or allow to be erected, maintained or to exist, any building, structure or physical obstruction of any kind adjacent to or over said Track at distances less than those prescribed by lawful authority; and in the absence of any such clearances as prescribed by governmental authority, no building, structure or physical obstruction shall be erected, maintained or allowed to exist within eight and one-half (8½) feet of the center line of said Track or at a height of less than twenty-three (23) feet above the top of the rails of the Track, except as to wires, the overhead minimum clearance of which shall be in accordance with specifications of the current National Electrical Safety Code, and in no case less than twenty-seven (27) feet (twenty-five (25) feet in the case of wires or cables suspended from messengers) above the top of rails of said Track, except [Borden] shall have the right to erect, maintain and use a *65 platform at a distance of seven feet nine and one-half inches (7' 9½") from the center line of the Track at the location indicated on the attached blueprint, upon the express condition, however, that [Borden] shall, at [Borden's] cost, erect and maintain suitable warning signs satisfactory to [IC] for the purpose of warning employees of [IC] of the existence of the reduced clearance. [Borden] will hold and keep harmless [IC] from all liability, loss, damage and cost, including attorneys' fees, for death of or injury to persons, including employees of the parties, or damage to property, including that belonging to the parties, in any manner or degree resulting from or arising out of [Borden's] failure to perform this covenant, or by reason of the existence, maintenance or use of said reduced clearance, unless due to the sole negligence of [IC]. Knowledge of or notice to [IC] of such failure and its continued operation over the Track thereafter shall not be a waiver of this covenant.
The trial court considered the terminology of the paragraphs, their placement in the contract, and the contract interpretation articles found in the Civil Code. The court found that section 4 was the general indemnity agreement and was intended to apply to situations not specifically covered in other sections. Section 7 was intended to govern the specific situation where buildings, structures or obstructions are placed near the tracks.
If a provision is susceptible of different meanings, the provision must be interpreted in a manner that renders it effective. LSA-C.C. art. 2049. Civil Code article 2050 states that "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
After a review of the entire contract and the provisions in light of one another, we agree with the interpretation of the trial court. This interpretation follows the rule of Civil Code article 2049 and article 2050. Sections 4 and 7 are both rendered effective and given the meaning suggested by their placement in the contract and the meaning suggested by the contract as a whole. Section 7 governs the factual situation presented here, that of an obstruction placed too near the track, and requires that Borden "hold and keep harmless [IC] from all liability, loss, damage and cost, including attorney's fees...."
For the foregoing reasons, we affirm the judgment of the trial court. The costs are assessed equally among the appellants.
AFFIRMED.