764 So.2d 1016 (2000)
CAPITOL NURSING HOME, INC., Timoth E. Wells and Jan Johnson Wells
v.
Ted NIXON and Rita Nixon d/b/a Nixon Associates.
No. 99 CA 0378.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
Writ Denied June 16, 2000.
*1017 Lee Herrington, Baton Rouge, for Plaintiffs-Appellees Capitol Nursing Home, Timoth E. Wells and Jan Johnson Wells.
Stephen B. Street, Jr., Baton Rouge, for Defendants-Appellants Ted Nixon and Rita Nixon d/b/a Nixon Associates.
Before: FOIL, WHIPPLE, and GUIDRY, JJ.
GUIDRY, J.
In this breach of contract case, appellants, Ted and Rita Nixon, d/b/a Nixon Associates, appeal from a judgment in favor of appellee, Capitol Nursing Home, Inc. ("Capitol"). For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Appellants operate an interior design, millworks and custom furniture business. In 1992, Capitol began preparations for expansion of the nursing home by adding a building with twenty-six additional patient beds and remodeling the existing buildings. An architectural corporation, Chenevert Soderberg, was retained to design the additions to the nursing home. RSR Construction was retained as the general contractor for the project.
Appellants contacted Capitol about the scheduled renovations and sought to be retained for the interior designs and millwork. In 1992 and 1993, appellants and Capitol entered into several agreements for Mrs. Nixon to provide interior design services and Nixon Associates to do some millwork and construct custom furniture. The agreements were prepared by the Nixons; however, the parties negotiated several aspects of the agreement prior to executing the contracts. According to Jan and Timoth E. Wells, the owners of Capitol, appellants were to construct their millworks and furnishings in accordance with the plans and specifications prepared by the architect. However, the plans and specifications were not included as part of *1018 the agreements and appellants were not under the supervision of the architect or the general contractor.
The Wellses also wanted to construct a new home. Appellants informed them that Mr. Nixon was a general contractor. After some negotiations, Mr. Wells and Mr. Nixon entered into a contract on September 21, 1993, for Mr. Nixon to supervise the construction of the house (the "Supervision Contract"). Mr. Nixon was to be paid 10% of the total cost, which was estimated to be $320,500.00.
The nursing home was scheduled for completion in December, 1993. However, according to Capitol, completion was delayed due to appellants' failure to perform their portion of the work in a timely fashion. Additionally, Capitol asserted that much of the work done by appellants was unworkmanlike and that appellants overcharged for the work performed.
A breakdown in communication between appellants and the Wellses occurred in late 1993, which resulted in the Wellses having their attorney send two letters in January 1994, advising appellants not to return to the nursing home property or their presence on the property would be treated as a trespass. Additionally, on December 22, 1993, the Supervision Contract between Mr. Wells and Mr. Nixon was terminated.
Capitol and the Wellses filed a petition for damages for breach of contract on April 13, 1994. On May 3, 1994, appellants filed an answer and reconventional demand. Capitol and the Wellses answered the reconventional demand on May 11, 1994, generally denying the allegations therein.
A trial was held March 18-21, 24 & 25, 1997, before Judge Janice Clark. However, after taking the matter under advisement, Judge Clark recused herself from the case and ordered a new trial of the matter. The case was reassigned to Judge Robert D. Downing. By joint stipulation of the parties, the matter was to be decided by Judge Downing on the record from the prior trial.
On June 29, 1998, Judge Downing rendered a judgment in favor of Capitol and against appellants in the amount of $83,815.52. The Wells' claim was denied,[1] and appellants' reconventional demand was also denied.
Appellants filed a motion for new trial on July 6, 1998, on the grounds that the first day of the March, 1997 trial had not been transcribed and that the trial court's decision, which was not based on a complete transcript, should be vacated and a new trial ordered. A hearing on the motion was held on August 31, 1998.
A judgment was rendered on September 3, 1998. Pursuant to this judgment, the motion for new trial was granted for the limited purpose and to the limited extent of the trial court considering the March 18, 1997 transcript. However, the trial court determined after reviewing the transcript that the June 29, 1998 judgment remained unchanged. Thereafter, appellants suspensively appealed.

ASSIGNMENTS OF ERROR
Appellants assert the following assignments of error.
1. The trial court erred in rendering judgment against appellants without the complete transcript of the trial, in violation of the court's own order and the stipulation of the parties.
2. The trial court erred when, after properly granting appellants' Motion For New Trial, it conducted the "new trial" by simply reading the missing transcript, when there was no agreement or stipulation between the parties to allow the "new trial" to be conducted on transcripts, and appellants' counsel repeatedly stated his objections to the *1019 "new trial" being conducted on transcripts.
3. The trial court erred in re-rendering the same judgment against appellants, as such judgment was contrary to the law and evidence.
4. The trial court erred when it denied appellants' claims in reconvention.

DISCUSSION

The Motion for New Trial
In their first assignment of error, appellants argue that the trial court erroneously rendered the first judgment without a complete transcript. This is true; however, it is of no moment. After the motion for new trial was filed by appellants, the trial court recognized its error in failing to read the testimony of March 18, 1997, and granted the motion for the purpose of including that testimony in the record. Thereafter, a judgment on the motion was rendered. This judgment was based on all the evidence, including the previously overlooked testimony. Unfortunately for appellants, the testimony did not change the trial court's decision. Nevertheless, the judgment clearly indicates that the trial court considered the March 18, 1997 transcript in reaching its decision of September 3, 1998. Accordingly, this assignment of error has no merit.
In their second assignment of error, appellants argue that the trial court erroneously conducted the second new trial on the transcripts of the March, 1997 trial. According to appellants, after the mix-up of the first new trial, the parties did not stipulate to have the second new trial decided on the transcripts; thus, they argue that it was error for the trial court to not retry the entire case. We disagree.
La. C.C.P. art. 1971 allows a new trial to be granted "to all or any of the parties and on all or part of the issues, or for reargument only." Furthermore, implicit in the authority granted the trial court pursuant to Article 1971 is the power to define and limit the scope of the new trial. Hawthorne v. Hawthorne, 96-89, p. 5 (La.App. 3rd Cir.5/22/96), 676 So.2d 619, 622, writ denied, 96-1650 (La.10/25/96), 681 So.2d 365; Russell v. McDonald's Corporation, 576 So.2d 1213, 1217 (La.App. 5th Cir.1991). A trial court has virtually unlimited discretion to grant a new trial when it is convinced that a miscarriage of justice has resulted, and, unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed. Heritage Worldwide, Inc. v. Jimmy Swaggart Ministries, 95-0484, p. 3 (La.App. 1st Cir.11/16/95), 665 So.2d 523, 526, writ denied, 96-0415 (La.3/29/96), 670 So.2d 1233.
We opine that it was well within the trial court's power and discretion to limit the new trial to the trial transcript, including the previously overlooked March 18, 1997 testimony. In light of the fact that the matter had been pending for several years and in the interest of justice and judicial economy, deciding the case on the complete record was proper in this situation. All parties involved presented ample expert and lay testimony at the original trial to prove their claims to the trier of fact. We do not believe it was necessary, in this case, to expend the additional time and money to present the same evidence to the trier of fact. Accordingly, this assignment of error lacks merit.

Manifest Error-Clearly Wrong Review of Merits
Appellants assert that this case should be reviewed de novo by this court. We disagree. Although the matter was submitted to Judge Downing without live testimony or presentation to a jury, the manifest error standard of review for the appellate court remains the same. Richard v. Borden Inc., 597 So.2d 60, 62 (La. App. 1st Cir.1992). "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared *1020 with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La. 1987) (emphasis omitted) (quoting Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973)).
The trier of fact has great discretion regarding factual matters, and a court of appeal should affirm where the trial court's judgment is not clearly wrong or manifestly erroneous. Creekmore v. Elco Maintenance, 94-1571, p. 3 (La.App. 1st Cir.6/30/95), 659 So.2d 815, 817; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where the trier of fact has a choice between more than one reasonable view of the evidence, his choice of one or the other of these cannot be wrong. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 8 (La.7/1/97), 696 So.2d 551, 556; Stobart v. State through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
In support of its argument that the Nixons overcharged Capitol, delayed the project,[2] and produced an unworkmanlike product, Capitol presented several witnesses and exhibits. Cancelled checks in the record indicate that Capitol paid $202,512.38 for the work performed by appellants. However, Capitol's expert, Richard D. Kogler, II, estimated that the work performed by Mr. Nixon was valued at $104,384.41. Additionally, although Capitol's interior design expert, Rachel Smith, was unable to determine many of Mrs. Nixon's actual costs, Ms. Smith concluded that Mrs. Nixon charged Capitol much more than 10 percent over cost for other items. Furthermore, Ms. Smith opined that the carpet and wallcoverings were not appropriate for nursing home use, and the draperies were substandard and the workmanship of the installation was very poor. In sum, Capitol's experts opined that much of the work by appellants was unworkmanlike and photographs in the record supported these opinions.
Additionally, a major issue in the case involved whether or not appellants were required by their agreement with Capitol to comply with the plans and specifications prepared by the architect. In particular, Capitol claims that appellants were required to comply with Architectural Woodwork Quality Standards published by the Architectural Woodwork Institute as set forth in the plans and specifications. Furthermore, appellants used poplar for construction" of the custom furniture. According to Capitol, appellants were required, per the plans and specifications, to use white ash. Appellants, on the other hand, assert that their contract with Capitol contains no requirement that they conform to the plans and specifications prepared by the architect. Instead, appellants argue that the agreement was that Mr. Nixon would construct the furniture in accordance with the work he had previously done, which the Wellses had observed at other locations.
Clearly, the executed contracts in the record contain no requirement that the plans and specifications be followed by Mr. Nixon. Written agreements, however, may be verbally modified. Specifically, a building contract need not be in writing; *1021 thus, parol evidence is admissible to prove a subsequent verbal agreement to modify or even to abrogate a written construction contract. Great Southern Homes, Inc. v. Holten, 460 So.2d 662, 663 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1250 (La. 1985); see also Baxter v. Zeringue, 501 So.2d 327, 329 (La.App. 5th Cir.), writ denied, 504 So.2d 879 (La.1987).
In the present case, the trial court concluded that appellants used wood other than that specified in the plans and specifications. Thus, we must assume that the trial court concluded that the parties verbally agreed that the millwork and custom furniture was to be constructed in accordance with the specifications. This conclusion is supported in the record by the live testimony of Norman J. Chenevert (of Chenevert Soderberg), who testified that he met several times with the Wellses, RSR Construction and appellants and that it was agreed and understood among everyone, including appellants, that they were required to follow the plans and specifications. Likewise, Mr. Wells testified that although appellants were a separate subcontractor, the work was to be performed in accordance with the plans and specifications.
Thus, the record supports the trial court's conclusion. Two views of the evidence were presented at trial, and the view accepted by the trial court was reasonable. Accordingly, the award of $83,815.52 to Capitol is affirmed.
Finally, appellants assert that the trial court erroneously denied their reconventional demand for $60,918.06. However, as previously indicated, the trial court concluded from the testimony and exhibits presented by Capitol that appellants breached their agreement with Capitol. Specifically, the trial court concluded that they did not comply with the wood specifications, and that they produced an unworkmanlike product. Accordingly, the denial of appellants' reconventional demand was not manifestly erroneous.

CONCLUSION
Therefore, the trial court's judgment is affirmed. Costs of this appeal are assessed to appellants, Ted and Rita Nixon, d/b/a Nixon Associates.
AFFIRMED.
NOTES
[1] Additionally, at trial, the Wellses voluntarily dismissed their claim for $2,500.00 in damages for defects in the construction of the foundation of their personal residence. Thus, this claim is not at issue on appeal.
[2] The trial court did not award damages for delay in the project although Robert S. Rotolo, owner of RSR Construction, and the Wellses testified as to delays in the project caused by appellants. However, the decision not to award delay damages is supported by the record because appellees testified that they received their certificate of occupancy in a timely manner. Furthermore, the record demonstrates that there were other delays unrelated to the appellants' work.