843 So.2d 519 (2003)
Donnie BOUDREAUX, et al.
v.
Benjamin J. WIMBERLEY, et al.
No. 02-1064.
Court of Appeal of Louisiana, Third Circuit.
April 2, 2003.
*520 Christopher Luke Edwards, Lafayette, LA, for Plaintiffs/Appellees Donnie Boudreaux Tammy Boudreaux.
Preston D. Cloyd, Lafayette, LA, for Defendants/Appellants State Farm Mutual Auto Ins. Co. Benjamin J. Wimberley.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS, and GLENN B. GREMILLION, Judges.
GREMILLION, Judge.
The defendants, Benjamin Wimberley and State Farm Mutual Automobile Insurance Company (sometimes collectively referred to as State Farm), appeal the trial court's grant of a new trial and its subsequent finding of fault on their part. For the following reasons, we affirm the trial court's grant of a new trial, but reverse its subsequent judgment and render judgment on the record.

FACTS
On March 23, 1997, the plaintiffs, Donnie and Tammy Boudreaux and their six-month old daughter, Tracy, were involved in an automobile accident after leaving the home of Tammy's mother and stepfather, the Ellises. Their home is located on the westbound side of an unlit stretch of U.S. Highway 190 in St. Landry Parish, Louisiana. Hwy 190 is a four-lane thoroughfare, divided at the site of the accident, which runs east and west across Louisiana. The accident occurred at dusk, at approximately 8:00 p.m. There are no street lights in the vicinity of the accident, with the only lighting coming from adjacent homes. Donnie was driving a 1995 Isuzu pickup, which they had purchased new six to eight months prior to the accident. The pickup had approximately 23,000 to 25,000 miles on it at the time of the accident.
Donnie exited the Ellises' driveway and turned west on Hwy 190, traveling approximately 150 feet before crossing over to the eastbound lane in order to reach their home in Melville, Louisiana. He stopped at the crossover and then pulled into the left lane of the westbound portion of Hwy 190. He had just shifted from first to second gear when he heard a loud noise from the pickup, after which it stopped "pulling." He attempted to maneuver the pickup towards the left and onto the grassy median. At the same time, Wimberley *521 was in the left lane approaching the Boudreauxs' pickup from the rear. Upon seeing flashing lights from an emergency vehicle in his rearview mirror, he intended to move his van from the left to the right lane. When he looked forwards again, he saw the Boudreauxs' pickup just ahead of him, which appeared to be either stopped or moving slowly in the left lane. He attempted to avoid it, but struck it in the rear causing it to flip several times before coming to rest partly in the left lane of Hwy 190's westbound lane.
The Boudreauxs filed suit, individually and on behalf of their minor daughter, Tracy, against Wimberley and his insurer, State Farm, seeking damages for injuries suffered as a result of this accident. American Isuzu Motors Inc. and Isuzu Motors Inc. were later added as defendants by the Boudreauxs. A motion filed by State Farm to sever the Boudreauxs' claims against it from those against American Isuzu and Isuzu Motors was granted. Although State Farm requested a jury trial in this matter, the Boudreauxs filed a motion to strike the jury trial, stipulating that each of their claims would not exceed $50,000, exclusive of interests and costs. They further requested the trial court to strike its order severing their claims against State Farm from those against American Isuzu and Isuzu Motors. The trial court granted both of these motions and ordered that the matter proceed as a bench trial. On November 29, 2000, the trial court granted a Partial Judgment of Dismissal dismissing without prejudice the Boudreauxs' claims against American Isuzu.
Following a trial on the merits, the trial court issued reasons for judgment on July 31, 2001, finding that the sole cause of the accident was Donnie's failure to drive with his lights on. On August 9, 2001, the Boudreauxs filed a Motion for Reconsideration or Alternatively for New Trial arguing that the trial court failed to consider the accident report of its accident reconstruction expert, Richard Fox. On August 28, 2001, the trial court rendered judgment in this matter in accordance with his reasons for judgment. On September 27, 2001, the Boudreauxs refiled their Motion for Reconsideration or Alternatively for New Trial. The court minutes indicate that a hearing was held on the motion on November 7, 2001, after which the matter was to be submitted for judgment. On December 18, 2001, the trial court issued further reasons for judgment taking into consideration the report of the accident reconstruction expert, and reapportioning fault to find Donnie sixty percent at fault and Wimberley forty percent at fault. Based on post-trial memoranda, the trial court issued further reasons for judgment on April 2, 2002, awarding $22,279.22 in damages to Donnie, $46,875.45 to Tammy, and $5,050.18 to Tracey. These amounts were reduced by the sixty percent fault attributed to Donnie for an award of $8,911.69 to him, $18,750.18 to Tammy, and $2,020.07 to Tracy.
State Farm appeals suspensively from these judgments. The Boudreauxs have answered this appeal arguing that the trial court erred in finding Donnie sixty percent at fault.

ISSUES
On appeal, State Farm raises three assignments of error. It claims that the trial court erred in granting the Boudreauxs' Motion for New Trial without finding the existence of any new evidence, in finding comparative fault based on the accident reconstruction expert's report in light of the testimony of four eye witnesses, and in awarding damages to the Boudreauxs that were not supported by the medical evidence. The Boudreauxs appeal raising *522 three assignments of error. They argue that the trial court erred by not applying the presumption of fault to Wimberley, as a following motorist who rear-ended their pickup, that it erred in finding Donnie comparatively at fault, and in not granting a full new trial.

MOTION FOR NEW TRIAL
In its first assignment of error, State Farm argues that the trial court erred in granting a new trial in favor of the Boudreauxs in the absence of any new evidence. The Boudreauxs argue that the trial court should have granted a full new trial in this matter.
Article 1971 of the Louisiana Code of Civil Procedure provides in part, "A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only." The peremptory grounds under which a new trial may be granted are set out in La.Code Civ.P. art. 1972:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
A new trial may also be granted if there is good grounds for doing so, "except as otherwise provided by law." La.Code Civ.P. art.1973. A trial court has great discretion in the granting of a new trial, and it will not be reversed on appeal absent a clear abuse of that discretion. Davis v. Coregis Ins. Co., 00-00475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, writ denied, 01-0292 (La.3/30/01), 788 So.2d 1192. Included in that discretion is the trial court's authority to define and limit the scope of the new trial. Capitol Nursing Home Inc. v. Nixon, 99-0378 (La.App. 1 Cir. 3/31/00), 764 So.2d 1016, writ denied, 00-1234 (La.6/16/00), 765 So.2d 336; La.Code Civ.P. art.1972.
Although we have no record of the hearing on the motion, the trial court evidently granted the new trial due to its failure to consider Fox's report since its second reasons for judgment were based solely on that information. In light of its vast discretion, we cannot say that it abused its discretion doing so. See Ruby v. Jaeger, 99-1235 (La.App. 4 Cir. 3/22/00), 759 So.2d 905, writs denied, XX-XXXX-X (La.6/30/00), 766 So.2d 542, where the trial court's grant of a new trial was affirmed based on its failure to consider certain legal principles in its original judgment.
We further find no error in the trial court's refusal to grant a full trial on rehearing. The Boudreauxs' motion was based solely on the trial court's failure to consider Fox's report. Since the report was in evidence, it was certainly within the trial court's discretion to limit the scope of the new trial to the record before it. Capitol Nursing Home, 764 So.2d 1016. The Boudreauxs achieved their aim of having the report considered. However, there was no need to drag all involved through the time and expense of an encore presentation of evidence already heard. Accordingly, State Farm's and the Boudreauxs' assignments of error are without merit.

FAULT
In its second assignment of error, State Farm argues that the trial court erred in *523 finding Wimberley comparatively at fault in causing this accident. It claims that there is no credible or unbiased testimony or evidence establishing that he did anything to cause the accident. In contrast, the Boudreauxs argue that the trial court erred in failing to apply the presumption of negligence applicable to a following vehicle in a rear-end accident and in finding Donnie comparatively at fault.
After reviewing the trial court's reasons for judgment, we find that it failed to apply the presumption that Wimberley, the following motorist, was negligent in causing the accident, when he rear-ended the Boudreauxs. Whenever an error of law was made by the trial court, we are required, if possible, to perform a de novo of the entire record and render a judgment on the merits. Bertrand v. Henry, 01-348 (La.App. 3 Cir. 12/19/01), 815 So.2d 868, writ denied, 02-0190 (La.3/28/02), 811 So.2d 945. Since the trial court's failure to apply the presumption of fault to the driver of the following vehicle is an error of law, we will now conduct a de novo review and render judgment accordingly.
A following motorist is presumed to be at fault in causing a rear-end collision. Mart v. Hill, 505 So.2d 1120 (La.1987). In such instances, the following motorist may free himself of liability by proving that he maintained a proper lookout. Thus, the burden of proof shifts from the plaintiffs to the driver of the following vehicle. Sonnier v. Reed, 532 So.2d 344 (La.App. 3 Cir. 1988). In Sonnier, 532 So.2d at 345, the court stated:
Following vehicles have escaped liability for rear-end collisions by establishing that the forward vehicle, encountered in the dark, was stalled and unlighted, or that the unpredictable driving of the preceding motorist created a sudden emergency that the following motorist could not reasonably have anticipated. Eubanks [v. Brasseal], 310 So.2d [550,] 553 [ (La.1975) ].
Wimberley testified that he was traveling at fifty-five miles per hour in the left eastbound lane of Hwy 190, on his way from Eunice to New Orleans, when the accident occurred. He stated that he saw flashing lights in his side and rear view mirrors and determined that he needed to yield to the emergency vehicle by changing lanes. In the fraction of the second that it took for him to look into his rear view mirror and then look forward again, he testified that he saw a vehicle ahead of him in the left lane. He stated that he did not perceive any movement from the vehicle or any lights on it, and that he only saw the pickup when it entered the field of his headlights. Wimberley testified that he attempted to avoid the vehicle by cutting his wheel to the right and slamming on his breaks, but his van glanced off the right of the pickup and ended up in the ditch located to the right of the eastbound lane. He further stated that he never saw the headlights of the pickup as it was heading west prior to crossing over and heading east on Hwy 190.
Deputies Martin Mayon and Steven Hidalgo, with the St. Landry Parish Sheriff's Office, were en route to a fight at a bar at the time of the accident. Both testified via deposition. Mayon stated that he was in the lead car, with his strobe lights on, with Hidalgo following behind. He stated that both of them were in the left lane of Hwy 190. Mayon testified that the accident occurred when a van he was approaching from the rear attempted to change lanes in order to yield to his vehicle. He stated that he saw the van shake a little bit and then shoot across the road to the right and then off the road. He stated that he was not aware that there was a vehicle ahead of the van until he saw a puff of white smoke and then a white pickup flipping in *524 the air. He stated that the pickup hit the median, flipped again, and then came to a rest on its left side in the left lane of Hwy 190's westbound lane. Mayon testified he did not see any lights on the pickup as it was flipping, nor did he see any lights on it after the accident. He stated that he probably would have hit the pickup had the van not done so since the area was dark. Mayon testified that the driver of the van did not put his brakes on prior to hitting the pickup, which implied that he did not see the pickup before the collision occurred.
Hidalgo testified that he did not see the white pickup until the accident occurred and it was flipping off the roadway. He stated that he did not see any lights on the pickup, but that he saw the reflection of the pickup's side as it came off the road in the headlights of Mayon's police car. After he stopped his vehicle, Hidalgo testified that he ran to the pickup to help its passengers. He stated that he did not see any lights on the pickup at that time.
Vickie Holmes and Tracy Miller were traveling westbound on Hwy 190 from Baton Rouge to Opelousas, at the time of the accident. Both testified that the accident happened at dusk. Holmes testified that she happened to look towards the eastbound lane and saw the Boudreauxs' pickup just before it was struck from behind. She stated that she was approximately fifty yards from the pickup at that time. She testified that the pickup appeared to be stopped, and that its headlights were not on. Although she did not see the van hit the pickup, Holmes stated that she saw the pickup start to flip end over end into the median. She stated that she did not see any lights on the pickup as it was flipping.
Miller, who was driving the vehicle in which she and Holmes were traveling, stated that she first saw the Boudreauxs' pickup as it was flipping towards their car, approximately 100 to 150 feet from their vehicle. She stated that she slammed on her brakes and moved her vehicle to the shoulder of the road as the pickup approached them. She testified that the pickup's headlights were not on as it was flipping towards them, and that none of its lights were on when she approached it on foot in order to render aid to the Boudreauxs.
After reviewing this evidence, we find that Wimberley has successfully overcome the presumption that he was negligent in causing this rear-end collision. The evidence presented by him satisfies his burden of proof that he was confronted with a situation involving a non-moving or slowly moving vehicle, without lights, which was located in the "fast" lane of Hwy 190's eastbound lane. Four independent witnesses testified that they did not see any lights on the Boudreauxs' pickup. Accordingly, we find that he has overcome the presumption of negligence that he caused this rear-end collision. In so finding, the burden of proof now falls back on the Boudreauxs to prove that Wimberley was at fault in causing this accident.
Donnie testified that he turned out of the Ellises' driveway into the left westbound lane of Hwy 190, stopped at the crossover, and then pulled into the left lane of the eastbound lanes. He stated that he saw one vehicle quite some distance off before moving into the left lane. In his deposition, he opined that he had traveled approximately two to three hundred feet in the eastbound lane and was shifting from first to second gear when he heard a loud noise from the pickup. At that point, he stated that the pickup stopped pulling; in his deposition, he stated that they were traveling approximately ten miles per hour at that point. Donnie testified that he knew he was not *525 traveling fast enough to make it to the paved shoulder located to the right of the right-hand lane so he tried to steer the pickup into the grassy median located to the left of the left-hand lane. Before he could reach the median, they were struck from behind by Wimberley. Donnie testified that he turned the pickup's lights on before leaving the Ellises, but he admitted that he did not put the emergency lights on after he heard the noise.
Edward Ellis, Tammy's stepfather, and Nicholas Rudolph, her brother, both testified that Donnie turned the pickup's lights on before leaving. Both stated that he had reached the crossover and was heading east when they heard a noise from the pickup. Edward stated that it sounded as though the pickup's drive shaft had come loose. Rudolph, who was thirteen years old at the time of the accident, stated that Donnie was traveling approximately fifteen miles per hours when he heard the loud popping noise. Edward stated that he saw the lights on the Isuzu as it flipped through the median. Both Edward and Rudolph testified that they never saw any vehicles approaching the Boudreauxs' pickup from the rear as they headed east on Hwy 190.
The Boudreauxs introduced Fox's accident reconstruction report into evidence. This report stated the following with regard to the pickup at the time of the accident:
May 16, 1997Field Investigation
We traveled to a house on U.S. 190 east of the Town of Port Barre, near the crash site, which Attorney Artall. Donnie Boudreaux was present during our inspection of his pickup. The taillights on Boudreaux's tuck were already removed from their assemblies, except that the high mounted brake light was intact.
Examination of the high-mounted brake light bulb yielded inconclusive results. Since it was far removed from the point of force application, we cannot say if it were (sic) working at the time of this crash. However, one tail light, with a broken envelope, showed evidence of possible incandescence during the force application.
We photographed this remnant from several vantage points. Our examination revealed that the lamp was a combination tail light and brake light bulb. The brake light filament wire was missing, completely. However, the tail light filament wire was present, although broken off one post. Stretching of the wire near the broken end may have resulted from stresses suffered during the collision or subsequent rollover after the lamp's envelope had been broken........ We have concluded that this tail light was more likely than not incandescent during the collision event. Without the other side's lamp to examine, we cannot say any others were incandescent at that time.
In a February 7, 2001 addendum to this report, Fox states:
We believe that, lighting conditions aside, Mr. Wimberley could have seen and should have seen the stopped pickup soon enough to avoid striking it. His only excuse was the distraction provided by approaching emergency vehicles using visible emergency warning devices. The investigating trooper seems to have come to the same conclusion, as he noted Mr. Wimberley's condition as "inattentive or distracted."
Finally, we believe it likely that the tail light we examined in May 1997 was lit at the instant of impact by the Wimberley van.
After reviewing the record, we find that the Boudreauxs failed to prove by a preponderance *526 of the evidence that Wimberley was at fault in causing the accident. Fox's report made a conclusory statement that, more likely than not, the one remaining tail light found on the vehicle approximately two months after the accident was lit at the time of impact. His report does not indicate in any manner how he reaches this conclusion from a scientific point of view. It only appears to recant some of the evidence and renders its own factual finding. We find this evidence insufficient to carry the Boudreauxs' burden of proof in light of the testimony from the four independent witnesses, Deputies Mayon and Hidalgo, Holmes and Miller. In light of this finding, we now render judgment dismissing the Boudreauxs' claims against State Farm. The Boudreauxs' assignments of error concerning fault are found to be without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting the new trial is affirmed. The judgment appealed from is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in favor of the defendants-appellants/appellees, Benjamin Wimberley and State Farm Mutual Automobile Insurance Company, and against the plaintiffs-appellees/appellants, Donnie and Tammy Boudreaux, dismissing the Boudreauxs' suit against them. The costs of this appeal are to be assessed to the plaintiffs-appellees/appellants, Donnie and Tammy Boudreaux.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
PETERS, J., concurs in the result.