# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-859

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

**VERSUS**

**TOMMIE MACK GRANGER**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 205,470
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

                                              **AFFIRMED.**

**Henry B. Bruser, III**
**Michael John O'Shee**
**Edward E. Rundell**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**Telephone:  (318) 445-6471**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Gold, Weems, Bruser, Sues & Rundell**

**David Cleveland Hesser**
**2820 Jackson Street**
**Alexandria, LA 71301**
**Telephone:  (318) 542-4102**
**COUNSEL FOR:**
    **Plaintiff/Appellee - Gold, Weems, Bruser, Sues & Rundell**

**Staci Knox Villemarette**
**Cloud, Wimberly & Villemarette, L.L.C.**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**Telephone: (337) 289-6906**
**COUNSEL FOR:**
     **Defendant/Appellant - Tommie Mack Granger**

THIBODEAUX, Chief Judge.

Defendant, Dr. Tommy Mack Granger (Dr. Granger), is a former client of attorney J. Ogden Middleton, II (Middleton), who was a partner in the Plaintiff's law firm of Gold, Weems, Bruser, Sues & Rundell (Gold). Dr. Granger appeals the trial court judgment awarding Gold $49,999.00 in past due attorney fees, plus twelve percent interest based on the engagement agreement signed by both parties, court costs, and additional attorney fees incurred in the collection of the bill. Dr. Granger alleges that the trial court committed twenty-six errors of law and fact, requiring this court to reverse the judgment. For the following reasons, we affirm the trial court judgment.

I.

**ISSUES**

While Dr. Granger argues that the trial court committed twenty-six errors, each of which would require this Court to reverse the judgment of the trial court that Dr. Granger owes Gold $49,999.00 in past due attorney fees plus interest and court costs, we find that those errors are encompassed within five issues:

(1)    whether the fee charged by Gold was reasonable;

(2)    whether the trial court abused its vast discretion in considering the admissibility of evidence;

(3)    whether the trial court committed legal error by assessing interest against sums owed at the agreed upon contractual rate of twelve percent, and not using the legal interest rate;

(4)    whether the trial court committed manifest error by denying Dr. Granger's motion for an involuntary dismissal at the close of Gold's case in chief; and,

(5)    whether the trial court erred in denying Dr. Granger's motion for a new trial.

## FACTS

Dr. Granger's marriage to his wife Stephanie ended in divorce. They had one child together during their marriage. During the course of the divorce proceedings, the matter of which of the parents would be named domiciliary parent by the court became a hotly contested issue. While he had a team of lawyers working on his behalf on other matters related to his divorce, in December of 1999 Dr. Granger sought the assistance of Gold, specifically Middleton, to help him in his quest to be named domiciliary parent.

Dr. Granger and Gold created and signed an Engagement Agreement to memorialize their understanding of what Dr. Granger would be billed for and what work Gold would perform on his behalf. Paragraph six of the Engagement Agreement gave Dr. Granger the right to terminate the employment of Gold at any time and have no further obligation to Gold "other than to pay for fees and expenses incurred up to the time of notification of Gold by Client of the termination of employment." The next paragraph enumerated Gold's right to collect any unpaid bills. "In the event that collection efforts and/or litigation are necessary to obtain payment of monies due under this agreement, Client shall be liable for all costs and expenses thereof (including attorney's fees, calculated at the rates set forth above if Gold elects to handle the matter itself)."

The custody issue was litigated intensely by both parents. For more than one year, many hours of work were performed, generating thousands of dollars in legal fees up through and including the trial on the custody matter. The trial court judgment named Dr. Granger's ex-wife as the domiciliary parent. Dr. Granger had been receiving monthly, itemized bills from Gold for the time, resources, and

expenses that were being expended on behalf of his case. Upon learning the trial court judgment against him, Dr. Granger began expressing his dissatisfaction with the work done by Gold. He hired a new attorney to pursue an appeal of the trial court judgment and refused to pay Gold any of the outstanding balance on his bill.

Gold filed a breach of contract suit to collect the fees it claimed were owed based on the monthly bills generated and sent to Dr. Granger and the Engagement Agreement signed by both parties. While Gold originally claimed Dr. Granger owed approximately $80,000.00, that claim was modified and reduced to $49,999.00 plus interest, court costs, and attorney fees incurred in the collection of the debt in order to avoid a jury trial. The trial court determined that Gold proved the amount was in fact owed to it by Dr. Granger, and that Dr. Granger did not bear his burden of proving that those fees were clearly excessive. Therefore, judgment was rendered against Dr. Granger for $49,999.00 plus interest, court costs, and attorney fees. Dr. Granger then timely filed this appeal.

III.

**LAW AND DISCUSSION**

**Standard of Review**

Courts are vested with the responsibility of both monitoring and analyzing the attorney/client relationship, even when it is based on a written contract between the parties.

> [A]lthough the basic relationship between client and lawyer may be contractual, that association is nonetheless subject to the inherent authority of this Court to positively affect that fiduciary relationship through its power to regulate the practice of law. *See O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So.2d 697; *[LSBA v.] Edwins*, 540 So.2d [294 (La.1989)] at 299.

*Chittenden v. State Farm Mut. Auto. Ins. Co.*, 00-414, pp. 9-10 (La. 5/15/01), 788 So.2d 1140, 1147-48 (footnote omitted).

When there is a dispute concerning fees charged by the attorney to the client pursuant to the contract between the parties, courts resolve the disagreement using the Louisiana Rules of Professional Conduct (RPC) as guidance. "Therefore, any dispute relative to an attorney-client relationship is subject to the close scrutiny of this Court and is resolved under the codal provisions as illuminated by the RPC. *See Leenerts Farms v. Rogers*, 421 So.2d 216 (La.1982); *see also Watson v. Cook*, 427 So.2d 1312, 1316 (La.App. 2 Cir. 1983)." *Chittenden v. State Farm Mut. Auto. Ins. Co.*, 788 So.2d at 1148.

The RPC which governs the determination of whether the fees set and charged by an attorney are reasonable reads in pertinent part as follows:

Rule 1.5 Fees

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the result obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Louisiana Rules of Professional Conduct 1.5.

Fees charged for legal services are open accounts. Louisiana Revised Statutes 9:2781 provides in pertinent part:

§ 2781. Open accounts; attorney fees; professional fees; open account owed to the state

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

. . . .

D. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account"

shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

La.R.S. 9:2781 A & D.

While courts are vested with the responsibility of policing attorney conduct, that responsibility must be tempered with restraint, especially when the parties have signed a contract which memorializes the terms of their agreed-upon relationship.

> Review of allegedly excessive attorney's fees is tempered with judicial restraint. *Drury v. Fawer*, 590 So.2d 808, 810 (La.App. 4th Cir. 1991), *writ denied*, 592 So.2d 1304 (La.1992). Courts are not in the business of setting fees. *Id.* However, if the court factually determines that fees billed were never earned, a reduction in the fees is proper. *Id.* at 811. Otherwise, absent a showing that the fee charged was clearly excessive, a contractual relationship between an attorney and client should not be altered. *Id.* at 811. "A fee is 'clearly excessive,' if it is 'so grossly out of proportion with the fees charged for similar services by other attorneys in the locale as to constitute an unquestionable abuse of the attorney's professional responsibility to the public.'" *Teche Bank and Trust Co. v. Willis*, *supra* [93-732, p. 5 (La.App. 3 Cir. 2/2/94), 631 So.2d 644] at 646-47 (quoting *Desselle v. Moreauville State Bank*, 553 So.2d 1067, 1069 (La.App. 3d Cir. 1989), *writ denied*, 558 So.2d 584 (La.1990)). The trial court's determination of whether a fee is clearly excessive is a factual question which will not be disturbed absent manifest error. *Id.* at 647.

*Salsbury v. Salsbury*, 27,062, p. 6 (La.App. 2 Cir. 6/21/95), 658 So.2d 734, 738-39.

An appellate court cannot overturn or reverse a trial court's setting of attorney fees unless the appellate court finds that the trial court abused the discretion afforded by the RPC, the Louisiana Constitution, and Louisiana jurisprudence. See RPC 1.5; *Leenerts Farms, Inc.*, 421 So.2d 216, and *Chittenden*, 788 So.2d 1140. "The amount of reasonable attorney fees to be allowed is at the discretion of the trial court. *Teche Bank and Trust Co. v. Willis*, 93-732 (La.App. 3 Cir. 2/2/94); 631 So.2d

6

644." *Albert K. Newlin, Inc. v. Morris*, 00-1564, pp. 6-7 (La.App. 3 Cir. 2/28/01), 782 So.2d 1116, 1120, *writ denied*, 01-875 (La. 5/25/01), 793 So.2d 164.

However, appellate courts must examine the reasonableness of the fee, even if based on a contractual agreement.

> The Louisiana Supreme Court and this court, in holding that to enforce Article 2000 in some instances, may violate the Rules of Professional Conduct's ban against an attorney accepting a clearly excessive fee, have placed an obligation on courts to inquire into the reasonableness of attorney fees stipulated in contractual agreements. *Desselle*, 553 So.2d 1067 at 1069.

*Teche Bank and Trust Co. v. Willis*, 93-732, p. 6 (La.App. 3 Cir. 2/2/94), 631 So.2d 644, 646.

> [H]owever, quantum meruit does not serve to permit a client who has agreed to pay an hourly fee, and on whose behalf services have been performed pursuant to that agreement, to ignore statements for those services, discharge the attorney, and avoid contractual fee obligations theretofore incurred. As to services rendered in accordance with the parties' agreement, the contractual provision is enforceable unless the fee is "excessive, unearned, or incommensurate." *Lester v. Lester*, 516 So.2d 219 (La.App. 4 Cir. 1987).

*Salley & Salley v. Stoll*, 03-807, p. 6 (La.App. 5 Cir. 12/9/03), 864 So.2d 698, 703.

**Reasonableness of the Fees Charged**

The one who asserts a fact bears the burden of proving that fact; therefore, the burden of proving the reasonableness of the fees charged is on the attorney claiming fees are owed. *Succession of Herrle*, 517 So.2d 386 (La.App. 5 Cir. 1987), *writ denied*, 519 So.2d 129 (La.1988). Once an attorney proves to the trial court's satisfaction that the amount claimed due is actually owed, the burden of proof shifts to the client to prove that the fees are clearly excessive. *Teche Bank and Trust Co.,* 631 So.2d 644.

> Of course, just because particular evidence is admissible does not mean that it will be persuasive to the finder of fact or that it is sufficient to support some particular factual finding. But, in the present case it is obvious that the trial court *did* find the billing statements persuasive. The issues of the work done and the amounts owed are ones of fact and we may not set aside the trial court's factual determinations unless they are "clearly wrong" or "manifestly erroneous."

*Fawer, Brian, Hardy & Zatzkis v. Howes*, 93-2076, p. 5 (La.App. 5 Cir. 6/15/94), 639 So.2d 329, 332, *writ denied*, 94-1893 (La. 10/28/94), 644 So.2d 653.

Gold submitted copies of the monthly billing statements sent to and received by Dr. Granger, the Engagement Agreement which served as the contract for agreed-upon services and terms between the parties, itemized bills for work and time spent on Dr. Granger's case, the entire Gold file for work performed on Dr. Granger's case, and the testimony of Middleton to support the claim that the fees claimed were actually owed. The trial court ruled that those various forms of evidence satisfied Gold's burden of proving that the fees were actually owed. The burden then shifted to Dr. Granger to prove that the fees owed were clearly excessive.

Dr. Granger does not dispute the hourly rate charged by Gold. He is not arguing that the fees charged were clearly excessive. Instead, he argues that Gold charged for work that was either unnecessary or not actually performed. Dr. Granger received bills each and every month from Gold. The bills he received provided details of the reasons for each of the new monthly charges, including providing Dr. Granger with a running total on the balance of what was owed by him to Gold. Gold argues that Dr. Granger made payments on those bills and never complained about the amount or size of the charges until he learned that he lost his battle to become domiciliary parent. In fact, Gold argues that Dr. Granger was always asking Middleton to put in more and more time on Dr. Granger's case to ensure that Dr.

8

Granger was awarded domiciliary custody of his young daughter. Based on the terms of their contractual engagement agreement, Dr. Granger could have fired Gold at any time. He did not have to allow the bills to accumulate unquestioned for so long.

Dr. Granger disputes 141 of the 1131 specific billing entries in the Gold bill that Gold alleges are still unpaid. Most of the disputed entries consist of phone calls, meetings, and conferences with other attorneys that Dr. Granger asserts do not match the time sheets of those other attorneys. Gold argues that even if these specific billing entries were dropped from the balance owed by Dr. Granger, it would only represent 4.8% of the entries, or 8% of the total bill. After reviewing the record in its entirety, we find that it was not unreasonable nor an abuse of discretion for the trial court to determine that in fact the fees charged were based on work actually performed and, therefore, owed by Dr. Granger to Gold. We agree with the trial court that Dr. Granger did not prove that the fees charged were for work that was clearly excessive and unnecessary. We, therefore, affirm the trial court's judgment that the fees charged to Dr. Granger were reasonable.

## Admissibility of Evidence

Almost half of the errors that Dr. Granger alleges were committed by the trial court involve issues surrounding the admissibility of evidence. A trial court is given vast discretion in its ruling on the admissibility of evidence, including whether or not witness testimony is relevant and admissible.

> The district court is given vast discretion in its decisions on evidentiary rulings and its decision to admit or exclude evidence will not be reversed on appeal unless it is clearly shown that it has abused that discretion. *Foster v. Rabalais Masonry, Inc.*, 01-1394 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784.

9

*Bellsouth Telecommunications, Inc. v. City of Lafayette*, 05-1478, p. 23 (La.App. 3 Cir. 1/5/06), 919 So.2d 844, 860.

We cannot overturn a trial court's rulings on the admissibility of evidence unless those rulings were clearly wrong or we find that the trial court abused the vast discretion it is accorded. Dr. Granger attempted to admit the testimony and deposition testimony of many various witnesses that the trial court found were irrelevant to the basic question presented to it, namely, whether the fees charged by Gold were reasonable and not clearly excessive.

> The trial court has broad discretion in ruling on pre-trial discovery, and an appellate court should not upset such a ruling absent an abuse of that discretion. *King v. Phelps Dunbar, L.L.P.*, 01-1735 (La.App. 4th Cir. 4/2/03), 844 So.2d 1012. This broad discretion includes the right to refuse or limit discovery of matters that are not relevant to the issues. *Id.*

*Walker, Toole & Lyons, L.L.P. v. Sapp*, 37,996, p. 8 (La.App. 2 Cir. 12/10/03), 862 So.2d 414, 419, *writ not considered*, 04-88 (La. 3/19/04), 869 So.2d 836.

We have carefully reviewed the entire record of this case and find that the trial court did not abuse its discretion in its rulings on the admissibility of the various forms of evidence submitted by Dr. Granger. Therefore, we affirm all of the trial court's evidentiary rulings.

### Contractual Versus Legal Rate of Interest

As mentioned above, a contract existed which memorialized the terms of representation agreed to by both Dr. Granger and Gold. That contract specified that if any sum of money owed by Dr. Granger went unpaid for thirty days or more, an interest rate of twelve percent would attach to the outstanding balance. It is allowable under Louisiana law for an attorney to charge a client interest on sums overdue as long as that interest rate is spelled out in a contractual agreement.

10

> With respect to the practice of attorneys charging their clients interest, it is permitted provided the client agrees in writing to such a charge, and the interest rate is lawful and reasonable. *Chittenden*, *supra*. Interest is a charge, or fee, commonly expressed as an annual percentage rate, paid by a person for the use he makes of, or a detention he exerts on, monies belonging to another, for a specified period of time. *Id*.

*Walker, Toole, & Lyons, L.L.P. v. Sapp*, 862 So.2d at 418.

Both the Louisiana Civil Code and the Louisiana Revised Statutes have codified how interest should be calculated on sums of money owed both under a contractual agreement and if based on the judicial rate of interest. The following are the applicable sections of Louisiana law regarding interest rates:

> La.Civ.Code art. 2000. Damages for delay measured by interest; no need of proof; attorney fees
>
> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well.
>
> La.R.S. 9:3500. Rates of legal and conventional interest; usury
>
> A. Interest is either legal or conventional.
>
> . . . .
>
> C. (1) The amount of the conventional interest cannot exceed twelve percent per annum. The same must be fixed in writing; testimonial proof of it is not admitted in any case.

Dr. Granger was ordered by the trial court to pay the interest rate on sums owed and overdue that he agreed to per the contractual agreement he signed

with Gold, which was twelve percent. Since this is the maximum amount allowed by law, and Dr. Granger agreed to that rate of interest in writing, the trial court committed no error in assessing the conventional, contractual interest rate of twelve percent against the fee awarded to Gold.

### Denial of Dr. Granger's Motion for an Involuntary Dismissal

At the close of Gold's case-in-chief, Dr. Granger asked the court to grant him an involuntary dismissal. He argued that Gold had not submitted evidence into the record to prove that the fees requested were actually owed.

Louisiana Code of Civil Procedure Article 1672(B) guides us in determining the appropriate standard for either granting or denying a motion for involuntary dismissal:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

An appellate court reviews a trial court's judgment on a motion for involuntary dismissal under a manifest error standard of review. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. A trial court is accorded great discretion in acting upon a motion for involuntary dismissal. *Smith v. Knight*, 39,781 (La.App. 2 Cir. 6/29/05), 907 So.2d 831. Our review of the record convinces us that the trial court did not abuse its discretion. Gold presented more than sufficient evidence to establish its claim by a preponderance of the evidence.

Gold offered its entire file regarding its representation of Dr. Granger, including all of the statements for outstanding bills, during the course of the trial before closing its case-in-chief. The trial court took this offer of evidence under advisement, and then later officially admitted the entire file into the official record of the case.

Since Gold offered this substantial body of evidence for admission into the record before closing its case-in-chief, the trial court did not err in denying Dr. Granger's motion for an involuntary dismissal. Gold did indeed offer more than a sufficient amount of evidence to prove that the fees it claimed were owed were in fact due. There was sufficient evidence in the record at the time Dr. Granger offered his motion for involuntary dismissal to support a denial of that motion.

## Motion for a New Trial

Dr. Granger focuses his motion for a new trial on the principal contention that the trial court erred in awarding interest pursuant to the contract between the parties. That assertion has been previously addressed in this opinion. Further, it is well-settled that a trial court is granted much discretion in granting or denying a motion for a new trial under La.Code Civ.P. art. 1972. *Boudreaux v. Wimberly*, 02-1064 (La.App. 3 Cir. 4/2/03), 843 So.2d 519, *writ denied*, 03-1251 (La. 9/5/03), 852 So.2d 1037; *McGhee v. Drennan, Inc.*, 04-950 (La.App. 4 Cir. 4/20/05), 904 So.2d 3.

## Attorney Fees for Defending the Appeal

Additionally, Gold has formally requested additional attorney fees for defending this appeal. Louisiana law and jurisprudence allow a party to be compensated for defending a case on appeal under certain circumstances.

13

Art. 2164. Scope of appeal and action to be taken; costs

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.

La.Code Civ.P. art. 2164.

> [A]dditional attorney fees are usually awarded on appeal to an appellee when the appellant obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. *Guidry v. Millers Casualty Insurance Company*, 01-0001, p. 11 (La.App. 1st Cir. 6/21/02), 822 So.2d 675, 684.

*Sund v. St. Helena Parish Sch. Bd.*, 05-2473, p. 6 (La.App. 1 Cir. 5/5/06), 935 So.2d 219, 223, *writ denied*, 06-1392 (La. 9/22/06), 937 So.2d 392.

Based on the record before us, and using the factors listed in RPC 1.5 as our guide, because of the work performed in responding to the voluminous appellate brief and record submitted by Dr. Granger, we award Gold an additional $4,000.00 in attorney fees for defending this appeal.

IV.

## CONCLUSION

While a contract between two or more parties is regarded as the law governing that contractual relationship, when the contract concerns the fees charged by attorneys to clients, Louisiana law directs the court to monitor that relationship. If a client does not pay his or her attorney fees, an attorney may seek redress with the court for payment under a suit for breach of contract. The attorney must first prove that the fee charged was reasonable. Upon successfully proving the fee was reasonable, the burden of proof then shifts to the client to prove that the fee charged

14

was clearly excessive. Gold successfully proved that the fee charged was reasonable. Dr. Granger could not meet his burden of proving that the fees charged to him by Gold were clearly excessive. Therefore, the trial court's award of attorney fees in the amount of $49,999.00 plus court costs and interest is affirmed.

A trial court is afforded vast discretion regarding determinations of the admissibility of evidence. Unless a trial court abuses that vast discretion, its evidentiary rulings will not be disturbed on appeal. In this case, we find that the trial court did not abuse its vast discretion, and we affirm the evidentiary rulings made by that court.

When parties to a contract stipulate to a rate of interest for overdue sums owed, as long as that rate of interest is within the legal limit, a court will enforce the contractual interest rate. Because Dr. Granger agreed to pay interest at the rate of twelve percent on any sums owed that were overdue by thirty days or more via the signed engagement agreement, the trial court is affirmed in awarding interest on the attorney fee award at that contractual rate.

An appellate court reviews a motion for involuntary dismissal de novo. Upon reviewing the entire record, we find that there was sufficient evidence offered by Gold to prove that the fees it claimed were owed were in fact earned and reasonable. Therefore, Gold proved that it had a right to relief, and the motion for involuntary dismissal was properly denied by the trial court.

Gold is awarded an additional $4,000.00 for work required in defending this appeal.

All costs of this appeal are assessed to Defendant/Appellant, Tommie Mack Granger.

**AFFIRMED.**