Judge Regina Bartholomew Woods • JjThis case arises as a result of a claim for a delinquent homeowner’s association assessments owed to Appellant, English Turn Property Owner’s Association (“ET-POA”). Notified nearly four years after the first delinquent assessment, the homeowner tendered payment for delinquent assessments prior to trial; therefore, that matter-was not at issue during the trial or on appeal. At issue at trial were the resulting interest, attorney’s fees, and costs that accumulated as a result of the delinquent assessments. After a trial on the merits, the trial court ¿warded a reduced amount of interest, attorney’s fees, and costs; pursuant to the reductions, the ETPOA appealed. For the reasons that follow,.we reverse, in part; vacate, in part; and remand for further proceedings. FACTUAL AND PROCEDURAL HISTORY . Appellee, Marilyn Cutrone Contogoüris; owns property located at 15 Murifield Place in the English Turn subdivision.[1] Pursuant to the English Turn |aproperty covenants, homeowners are required to pay an assessment twice per year; payment is due January 1st and July 1st of each year. According to ETPOA, Ms. Con-togouris failed to pay the'following-assessments: July 2010 ($1,230.00), July 2011 ($1,230.00), January 2012 ($1,290,00), July 2012 ($1,290.00), January 2013 ($1,290.00), July 2013 ($1,290.00), January 2014 ($1,350.00), and July 2014 ($1,350.00); the total of the unpaid assessments was $10,320.00. It was not until August 20, 2014, that the ETPOA notified Ms. Conto-gouris by letter of the delinquent assessments. In addition to demanding payment of delinquent assessments, ETPOA demanded attorney’s fees at the rate of thirty-five percent (35%), late fees at the rate of ten percent (10%), and interest at the rate of twelve percent (12%). In this letter, ETPOA’s attorney stated the following: “[federal law gives you [thirty] 30 days after you receive this letter to dispute the validity of this debt or any part of it.... If you request proof of the debt within the thirty (30) day period that begins with your receipt of this letter, the law requires me to suspend my efforts through litigation or otherwise to collect the debt until I mail the requested information to you.” In an undated letter to ETPOA’s counsel, Mr. Contogouris challenged the debt and requested the opportunity to retrieve his bank records.[2] Although the timeliness of Mr. Contogouris’ letter to plaintiffs counsel was disputed, an email from ET-POA dated September 10, 2014, makes reference to a letter from Mr. Contogour-is.[3] However, ETPOA’s counsel wrote to Mr. Contogouris on September 1 s24, 2014, and stated that he had not received Mr. Contogouris’ letter until September 22, 2014. On September 23, 2014, ETPOA filed the petition that gave rise to the underlying matter from which this appeal lies. In its judgment and incorporated reasons for judgment, the trial court awarded ETPOA late fees in the amount of five hundred dollars ($500), interest in the amount of eight hundred dollars .($800), attorney’s fees in the amount of four thousand sixty-seven dollars ($4,067), and court costs and judicial interest. In reaching this judgment, the trial court found “that defendant’s practices are inconsistent, deficient, and' inaccurate.”[4] The trial court also “took note of the length of time the defendant took to collect his bank records, and the years it took the plaintiff to bring forth this action ... as well as the length of time it took for [ETPOA] to deposit various checks that were tendered by the defendant. Hence, a substantial amount of late fees have not been awarded.” The trial court also found that the defendant’s “nonpayment of assessments for over four years” and the “process by which the defendant paid his assessments and kept this accounting” was “negligent” and is “not reasonable or responsible.” “Hence, some interest has been awarded to the plaintiff.” In reaching its decision, the trial court “took note of the conflicting testimony of the employees and bookkeepers of English Turn, and their failure to properly and adequately give timely notice of fees due.” It is from this judgment that ETPOA appeals. DISCUSSION |4In its brief, ETPOA designates a number of assignments of error. In summary, ETPOA questions whether the trial court erred in refusing to award the total amount of interest, late fees and attorney’s fees it sought. Although this matter stems from delinquent property owners’ association assessments, as noted in the trial court’s judgment and incorporated reasons for judgment, the parties reached a consent regarding the unpaid assessments totaling $10,320.00; therefore, the delinquent assessments are not part of this appeal, only the interest, late fees, attorney’s fees and costs associated therewith. INTEREST AND LATE FEES Disputes, such as the instant one, are governed by the Louisiana Homeowners Association Act as set forth in La. R.S. 9:1141.1, et. seq. Specifically, La. R.S. 9:1141.8 sets forth that “community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. The remedies for breach of any obligation imposed on lot owners or the association shall include damages, injunctions, or such other remedies as are provided by law.” In the instant matter, the community document pertinent to this appeal that was introduced into evidence during the trial of this matter is the Declaration of Covenants, Conditions and Restrictions (the “covenants”). The covenants provide for semi-annual assessments to be paid by the homeowner to ETPOA. This Court has previously interpreted the ETPOA covenants in accordance with this State’s jurisprudence regarding the interpretation of contracts. See English Turn Prop. Owner’s Ass’n, Inc. v. Short, 2016-0460, p. 8 (La. App. 4 Cir. 11/30/16, 1), 204 So.3d 672, 679, reh’g denied (Dec. 14, 2016). The interpretation of unambiguous contractual provisions is a matter of law, which this- Court reviews under the de novo standard. Landis Const. Co. v. St. Bernard Parish, 2014-0096, p.5 (La. App. 4 Cir. 10/22/14), 151 So.3d 959, 963. “[T]he determination of whether, a contract is clear or is ambiguous is- also a question of law.” Id. “Errors of law are reviewed de novo by the appellate courts.” Norfleet v. Lifeguard Transp. Serv., Inc., 2005-0501, p. 5 (La. App. 4 Cir. 5/17/06), 934 So.2d 846, 852. In the instant matter, we find that the trial court committed legal error in awarding conventional interest to the ET-POA. Section 9.08 of the covenants, which provides for conventional interest relative to unpaid assessments of an owner, reads as follows: 9.08 Effect of Nonpayment; Remedies of the Association. Any assessments of an owner.. .which are not paid when due shall be delinquent. Any assessment delinquent for a period of more than ten (10) days after the date when due shall incur a late charge in an amount as may be determined by the Board from time to time and shall also commence to accrue simple interest at the maximum rate , of eighteen (18%) percent per annum, but in no event to exceed the maximum rate authorized by Louisiana law. ETPOA introduced into evidence at trial the Minutes of the Board of Directors Meeting of the English Turn Property Owners’ Association, dated December 11, 2002. -These minutes contained a resolution, which provided the following (“the 2002 Resolution”): IfiAll accounts not paid by the end of the first month are considered delinquent[5] and a Fast Due Notice with a copy of the account will be mailed to the property owner. All delinquent accounts will be assessed a (10%) late fee for the current period and each previous past delinquent assessment, and will commence to accrue simple interest at the rate of eighteen (18%) per annum. (Footnote added). ETPOA argues that it should be awarded $4,977.75 in conventional interest, which is twelve percent (12%) on each semi-annual assessment from the due date until June 16, 2016, when the defendant’s check was honored by her bank. Twelve percent is the maximum conventional interest rate provided under La. R.S. 9:3503. In English Turn Prop. Owner’s Ass’n, Inc. v. Short, this Court-interpreted Section 9.08 .of the covenants, finding that ETPOA was entitled to judicial interest, not conventional interest, because the interest rate was not “fixed in writing.” Short, 2016-0460 at pp. 13-15, (La. App. 4 Cir. 11/30/16), 204 So.3d 672, 681-82. This Court stated the following: ... Rather than setting forth a definite rate of interest, Section 9.08 sets forth a range for the interest,rate.“as may be determined by the Board from time to time” which can be at any amount, so long as it is no more than “eighteen (18%) percent per annum” and so long as it does not “exceed the maximum rate authorized by Louisiana law.” Under these terms, the Board could arbitrarily choose any rate between zero (0) percent and twelve (12) percent, the maximum rate for conventional interest, [footnote omitted] Had the covenants specifically provided that the ETPOA could charge interest on unpaid assessments in the amount of twelve percent (12%), as the ETPOA seeks to do in this matter, there would be no issue, as that is the .maximum amount permitted by law; and the parties would be bound by that term. .... |7The covenants, though, do not comply with La. R.S. 9:3500 C(1), which provides that conventional interest “must be fixed in writing; testimonial proof of it is not admitted in any case,” We believe the term “fixed in writing” indicates that the interest rate set forth in a contract must be “fixed.” That is, it must, be certain so that the parties are mutually clear as to the amount of interest being charged. See, e.g., Gold, Weems, Bruser, Sues & Rundell v. Granger, 06-859 (La. App. 3 Cir. 12/29/06), 947 So.2d 835, 843 (“[i]t is allowable under Louisiana law for an attorney to charge a client interest on sums overdue as long as that interest rate is spelled out in a contractual agreement”). The covenants in this matter do not explicitly set forth the interest rate and are, thus, not “fixed in writing.” Moreover, under the Louisiana Homeowners Association Act, La. R.S. 9:1141.1, et. seq. (“the Act”): Upon the filing of a sworn detailed statement in accordance with this Part, an association of owners of lots in a residential or commercial subdivision shall have a privilege upon the lot and improvements thereon of an.owner in the subdivision who fails to .pay charges, expenses or dues imposed upon such lot and improvements thereon in accordance with recorded restrictions, servitudes, or obligations affecting such subdivision. The privilege shall secure unpaid charges, expenses or dues imposed by the association of owners, together with legal interest from the date due and reasonable attorney’s fees. La. R.S. 9:1145. (Emphasis added). It is clear that the privilege afforded under the Act includes legal interest. Based on the provisions of this statute and the ambiguity in ’ the covenants’ terms concerning interest, we find that thp ETPOA is entitled only to’ legal interest. We, therefore, find no error in the trial court’s award of judicial interest. However, the judgment, states that judicial interest is. owed “from the Date of -Judicial Demand.” La. R.S. 9:1145 provides that judicial interest is- owed from the date that the unpaid dues (assessments)' are owed. We therefore amend the judgment to reflect that judicial interest is owed from the date that the assessments became due. Id.[6] ^Notwithstanding the standard, set forth by this Court in Short, ETPOA argues that the instant matter differs from Short in a significant way. In Short, the 2002 resolution was never admitted into evidence. Id, at pp. 16-17, 204 So.3d at 683. The ETPOA would like this Court to believe that the 2002 resolution is equivalent to the term of “fixed in writing,” as contemplated by the instructive Louisiana Revised Statutes. However, that argument fails for two reasons: first, there was no evidence introduced that the 2002 Resolution was ever made part of the covenants or transmitted to the homeowners as an amendment and integral part of the covenants; furthermore, even if there was evidence showing that it was made part of the covenants, the interest rate contained in the resolution runs afoul of La. R.S. 9:3503, which provides for a maximum conventional interest rate of 12%, Moreover, La. R.S. 9:3501 provides that “[a]ny contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.” [Emphasis added]. Based on the aforementioned, the covenants between the ETPOA and the homeowner are considered a contract.. Further, pursuant to applicable statutory law, since there was no evidence showing that the 2002 resolution was made a part of the covenants, the ETPOA is disallowed from collecting any conventional interest for the reasons assigned by this Court in Short, to wit, the interest rate was never fixed in writing. Thus, analogous to the decision reached in Short, we find that while the ETPOA is not allowed to collect any conventional interest, we do hold |flthat an award of judicial interest is warranted. We find that the trial court committed legal error in awarding any amount of conventional interest to the ETPOA, as opposed to judicial interest from the date the unpaid assessments were due, and reverse that portion of the judgment accordingly, and remand for further proceedings. Next, we turn to the issue of late fees. Section 9.08 of the covenants provides that “[a]ny assessment delinquent for a period of more than ten (10) days after the date when due shall incur a late charge in an amount as may'be determined by the Board from time to time....” The 2002 resolution provides that “[a]ll delinquent accounts will be assessed a (10%) late fee for the current period and each previous past delinquent assessment....” ETPOA argues that under the 2002 resolution, ET-POA should be awarded $1,032.00 in late fees, which is ten percent (10%) of the outstanding assessments of $10,320.00. We disagree. “Contracts have the effect of law between the parties, and the courts are bound to interpret them according to the common intent of the parties.” 6126, L.L.C. v. Strauss, 2013-0853, p. 12 (La. App. 4 Cir. 12/4/13), 131 So.3d 92, 100-01 (citing La. C.C. arts. 1983 and 2045). See also La. R.S. 9:1141.8 (“community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners. ..”). ‘When a contract is not ambiguous or does not lead to absurd consequences, it will be enforced as written and its interpretation is a question of law for a court to decide.” 6126, L.L.C., 2013-0853 at p. 13, 131 So.3d at 1001. |tp |tpThe 10% late fee was set forth in the 2002 Resolution. However, there was no evidence introduced at trial that the 2002 Resolution was ever made part of the covenants or' transmitted to thé homeowners as an amendment and integral part of the covenants. Notice of modification of a contract that is reasonable in time and form is a basic right of any party. Harp v. Autrey, 47,749 (La. App. 2 Cir. 8/21/13, 10), 121 So.3d 1260, 1267(citing Stegall v. Orr Motors of Little Rock Inc., 48,241 (La. App. 2 Cir. 6/26/13), 121 So.3d 684, 688. Without the 2002 Resolution, Section 9.08 of the covenants is vague and does not contain a definitive method by which late charges are to be determined. See e.g., Short, 2016-0460 at p.17, 204 So.3d at 683. Thus, we find that the ETPOA is not entitled to any late fees and the trial court committed legal error when it awarded late fees to the ETPOA. Accordingly, we reverse and set aside that portion of the judgment. ATTORNEY’S FEES Regarding attorney’s fees, the trial court awarded $4,067.00, which is thirty-five percent (35%) of the total three items: $10,320.00 in assessments, $500.00 in late fees, and $800.00 in conventional interest. While not expressly stating the basis of its attorney’s fee award, it is clear that the trial court relied on the contract between ETPOA and counsel for ETPOA, which provides for attorney’s fees of “thirty-five (35%) percent of all funds received, including principal, late charges, interest, and costs,” This Court has “noted that ‘[a] court may consider a contingency fee contract when awarding attorney’s fees, but the court is not bound by the contract’s |terms.’ ” Short, 2016-0460 at p. 18, 204 So.3d at 684 (quoting Norfleet, 2005-0501 at pp. 18-19, 934 So.2d at 859).[7] “The trial court is vested with great discretion in arriving at an award of attorney’s fees, the exercise of which will not be reversed on appeal absent a showing of clear abuse of that discretion.” Discover Bank v. Rusher, 2010-0850, p. 3 (La. App. 4 Cir. 12/8/10), 53 So.3d 651, 653. Because we find that the trial court erred as a matter of law in its awards of late fees and conventional interest, it stands to reason that the trial court abused its discretion in calculating attorney’s fees based on the other erroneous awards. Furthermore, it should be noted that the contract between ETPOA and counsel for ETPOA provides for costs to be included in the calculation of attorney’s fees. The lower court awarded court costs to ETPOA but did not set forth the amount of those court costs in the judgment. Therefore, it is impossible to determine the exact calculable award of attorney’s fees without knowing the exact amount of costs to be awarded. Thus, we vacáte the award of attorney’s fees and remand this matter to the lower court for a determination of court costs and attorney’s fees. DECREE | igFor the foregoing reasons, we reverse and set aside the trial court’s award of conventional interest and • award judicial interest from the date due to the ETPOA; we reverse the trial court’s award of late fees; and we vacate the trial court’s judgment awarding attorney’s fees, and remand this matter for further proceedings not inconsistent with this opinion to determine the total amount of interest owed, court costs incurred, and an appropriate attorney’s fee award. REVERSED, in part, VACATED, in part and REMANDED LOBRANO, J., DISSENTS AND ASSIGNS REASONS JENKINS, J., DISSENTS AND ASSIGNS REASONS . On April 16, 2002, husband and wife, Spyro and Marilyn Contogouris, acquired this properly. In 2009, Spyro and Marilyn Contogouris divorced, but continue to live together in the home. Mr, Contogouris donated his orie-half interest in the property to Mrs. .Contogouris. By their agreement, Mr. Contogouris remains financially responsible for the English, Turn Property Owners Association assessments. .In his letter, Mr. Contogouris, states, in pertinent part, that he "feels certain that the demand for earlier payments must be in error as I recall paying my POA dues. Accordingly, I’ll order my check copies from the bank today and retrieve all the payments I have made and [forward] them to you upon receipt, along with any difference.” . Additionally, a copy of Mr. Contogouris’ letter is contained in the record and is marked "POA Received 9/9/14.” . While it is obvious that the trial court is referring to ETPOA, the trial court inadvertently labels ETPOA as "the defendant” rather than as the plaintiff. . In Section 9.08 of the covenants, the term "delinquent'’ describes assessments not paid within ten (10) days of becoming due. The 2002 resolution describes accounts not paid by the end of the first month as “delinquent.” Any distinction between these documents as to when assessments become "delinquent,” however, has no bearing on the disputed issues in the case sub judice. . This case differs from Short in that no party in Short introduced the 2002 resolution into evidence. See Id., 2016-0460 at pp. 16-17, 204 So.3d at 683, To the extent the 18% interest rate set forth in the 2002 resolution could be considered "fixed in writing,’’ this interest rate runs afoul of La. R.S. 9:3503, which provides a maximum conventional rate of 12%. La. R.S. 9:3501 provides that [a]ny contract for payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted. . "[T]his Court noted that certain factors are to be considered in determining the reasonableness of an award of attorney's fees, including: 1) the ultimate result obtained; 2) the responsibility incurred; 3) the importance of the litigation; 4) the amount of money involved; 5) the extent and character of the work performed; 6) the legal knowledge, attainment, and skill of the attorneys; 7) the number of appearances made; 8) the intricacies of the facts involved; 9) the diligence and skill of counsel; and 10) the court’s own knowledge.” Id. (citations omitted).