# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 22-768

**STATE IN THE INTEREST OF L.A.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
EUNICE CITY COURT
PARISH OF ST. LANDRY, NO. J-6510
HONORABLE M. TERRANCE HOYCHICK, CITY COURT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Annette Roach
CINC Appellate Project
Roach & Roach, APLC
2740 Rue de Jardin, Suite 400
Lake Charles, LA 70605
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
   R.A. (mother)**

**Trent Brignac**
**Thirteenth Judicial District Attorney**
**Julhelene Jackson**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Building 3, Room 150**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana, Department of Children and Family Services**

**Melody A. Allen**
**Acadiana Legal Service**
**1020 Surrey Street**
**Lafayette, LA 70501**
**(337) 288-2934**
**COUNSEL FOR APPELLEE:**
        **L.A. (minor)**

**GREMILLION, Judge.**

The mother, R.A., appeals the trial court's judgment of disposition and the earlier adjudication order which found her child, L.A., as being in need of care.[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The record commences with an affidavit in support of instanter order/instanter order for removal filed by the Department of Children and Family Services (DCFS) on April 19, 2022, which alleged "Neglect/Dependency and Lack of Adequate Supervision" of L.A., born September 15, 2020. Although the affidavit is signed by a Ville Platte caseworker, it was filed in East Baton Rouge Parish. The affidavit indicates that R.A.'s involvement with DCFS began in Evangeline Parish on November 12, 2021, because R.A. sent text messages to friends indicating she was going to kill herself and harm her children. R.A. was referred to DCFS on December 16, 2021, but L.A. was not removed from her custody until her subsequent arrest in East Baton Rouge Parish.

On April 18, 2022, the caseworker was informed that R.A. had been arrested on April 15, 2022, for Domestic Abuse Battery, leaving L.A. without a legal caretaker. On April 19, 2022, the Nineteenth Judicial District Court in East Baton Rouge Parish confirmed the Instanter Order removing L.A. and adjudicating him a child in need of care. On April 20, 2022, the Nineteenth Judicial District Court filed a petition to adjudicate L.A. a child in need of care because of his "mother's mental health causing diminished capacity . . .the substance abuse of his mother . . .and the lack of protective capacity and lack of supervision provided by his parents[.]" On

---

[1] We note that L.A. is often referred to as L.C., "C" being the last name of R.A.'s ex-boyfriend, T.C. T.C. is not the biological or legal father of L.A., and we refer to L.A. throughout by his legal name, L.A.

April 25, 2022, the Nineteenth Judicial District Court rendered a judgment continuing custody with DCFS stating in part:

> THE COURT, BASED ON THE STIPULATION OF THE PARENT, AND THE EVIDENCE IN THE VERIFIED COMPLAINT, AND WITHOUT OBJECTION OF COUNSEL FOR THE CHILD, FOUND REASONABLE GROUNDS TO BELIEVE THAT SAID CHILD IS IN NEED OF CARE AND SHOULD BE CONTINUED IN THE CUTSODY OF THE DEPARTMENT FOR THE CHILD'S SAFETY AND PROTECTION AND THAT CONTINUED CUSTODY IS IN THE CHILD'S BEST INTEREST, PENDING FURTHER INVESTIGATION.

On April 25, 2022, the Nineteenth Judicial District Court transferred the matter back the Thirteenth Judicial District Court in Evangeline Parish.

On July 7 2022, the Thirteenth Judicial District Court issued an adjudication order finding that DCFS proved the allegations set forth in the April 2022 petition filed in East Baton Rouge Parish by a preponderance of the evidence and that L.A. was a child in need of care in accordance with La.Ch.Code art. 606(A)(1-5). On August 12, 2022, the Thirteenth Judicial District Court issued an order transferring the case to Eunice City Court. Although not pertinent to the question of whether the initial adjudication was warranted, the following subsequently occurred. A judgment of disposition was filed September 13, 2022, by the Eunice City Court finding L.A. in need of care and continuing custody with the State. A three-month review hearing was scheduled for December 22, 2022.

T.C. and T.C., parents of T.C., R.A.'s former boyfriend, were named legal guardians. L.A. has remained in the custody of T.C. and T.C. since April 15, 2022.

R.A. now appeals and assigns the following errors.

**ASSIGNMENTS OF ERROR**

1. The trial court committed manifest error when it adjudicated L.A. to be a child in need of care as the State failed prove either of the allegations set forth in the Petition or that L.A. was a child in need of care as defined in La. Child. Code art. 606(A).

2

2. The trial court erred in permitting the child's attorney to question R.A. regarding an outstanding bench warrant over the objection of R.A. as the warrant was both irrelevant to the issues before the court and improper impeachment evidence.

# DISCUSSION

Louisiana Children's Code art. 606 provides the grounds for determining if a child is in need of care:

A. Allegations that a child is in need of care shall assert one or more of the following grounds:

(1)    The child is the victim of abuse perpetrated, aided, or tolerated by the parent or caretaker, by a person who maintains an interpersonal dating or engagement relationship with the parent or caretaker, or by a person living in the same residence with the parent or caretaker as a spouse whether married or not, and his welfare is seriously endangered if he is left within the custody or control of that parent or caretaker.

(2) The child is a victim of neglect.

(3)    The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent.

(4)    As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is now unable to retain custody or control or the child's welfare is otherwise endangered if left within the parent's custody or control.

(5) The conduct of the parent, either as principal or accessory, constitutes a crime against the child or against any other child.

(6) to (8) Repealed by Acts 2021, No. 158, § 7.

B.    A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.

C.    A diagnosis of factitious disorder imposed on another, formerly known as "Munchausen syndrome by proxy", shall not constitute grounds, either entirely or partially, for a determination that a child is in need of care unless that diagnosis is made in accordance with the provisions of R.S. 37:1745.2.

3

The state bears the burden of proving by a preponderance of the evidence that at least one of the factors in La.Ch.Code art. 606 has been met. La.Ch.Code art. 665. In the recent case of *State in the Interest of G.O.*, 21-154, pp. 8-9 (La.App. 3 Cir. 6/9/21), 322 So.3d 869, 874 (quoting *State ex rel. D.H.,* 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/06), 906 So.2d 554, 560), a panel of this court set forth the standard of review of a trial court's adjudication of a child as being in need of care:

> "We review the juvenile court's findings of fact under the manifest error standard of review[.]" *State ex rel. J.Y.M.*, 09-1335, p. 5 (La.App. 3 Cir. 8/4/10), 45 So.3d 1128, 1132. In *State ex rel. D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560, the first circuit noted:
>
>> [I]t is important that the appellate court not substitute its own opinion when it is the juvenile court that is in the unique position to see and hear the witnesses as they testify. [*In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.] Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the juvenile court. *Id.*; *see Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the juvenile court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*; *see Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270.
>>
>> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*.

*June 8, 2022 Adjudication Hearing*

Tabitha Guillory, DCFS caseworker, testified that the case originated in Evangeline Parish, but was transferred to East Baton Rouge Parish and then returned

4

to Evangeline Parish. Guillory testified that R.A. was being provided services following a November 12, 2021 report for neglect, dependency and lack of adequate supervision while L.A. remained in her care. While this was ongoing, R.A. moved to East Baton Rouge Parish and was arrested on April 15, 2022 for Domestic Abuse Battery. Guillory further testified that "at that time [R.A.] could not provide care for her child. And the child . . . entered the State's custody as a result of her incarcerations." Additionally, Guillory stated that R.A. had an untreated mental health diagnosis.

Guillory testified there were allegations of substance abuse. Guillory said DCFS requested a drug screen, but R.A. did not go within twenty-fours. However, she did test eventually and tested positive for amphetamines, which were prescribed, and no other illegal substances. Regarding removal related to mental health grounds, Guillory stated that R.A. did submit to an assessment for mental health treatment, but never received any treatment:

> And I do not have the … I don't have the records but the, um, foster care worker and her supervisor indicated that [R.A.] is manipulative but she didn't need mental health treatment. However, they weren't aware of the diagnosis the [R.A.] … the mental health diagnosis that [R.A.] received from the previous provider, Ville Platte … Biltmore Health Treatment, um who diagnosed [R.A.] with generalizing anxiety disorder and depression.

Guillory then testified that R.A. would not allow unannounced visits at her home.

Melody Allen of Acadiana Legal Services questioned Guillory about whether there were any outstanding warrants for R.A. to which R.A.'s attorney objected, but the trial court found that information was relevant and overruled the objection. In response, Guillory stated that R.A. did have a warrant for failing to attend a prior court hearing relating to her domestic abuse battery charge.

R.A. testified that she was a stay-at-home mom for the year prior and had a very close relationship with L.A.. When asked if she complied with the case plan, she testified:

> Yes ma'am, the lady right here was the old caseworker. My new caseworker since all of this had happened … all these accusations are from my ex-boyfriend, first of all. And his family. And that is where my son is at, in foster care, with him and his family. But they have no biological relations. None of my family were contacted. He falsely accused me of even hitting him and that's why I went to jail. I didn't do anything to hurt him. I …

She went on to state that she completed mental health evaluations and assessments, but they said she did not qualify for services, that she attended visitations, and that she never said DCFS could not arrive unannounced. She said she was employed and had stable housing, did not use drugs, kept in contact with the department, and thought the domestic abuse battery charges had been dismissed. Finally, she testified:

> I just want to say that I'm really not … I'm just … I was getting out of a bad relationship and that's the only thing that went wrong. Like, I shouldn't have dated that person. But I'm not … I've never been a bad mother. I've never had … I have a five-year old also, I never once had problems that is up until now. I'll never do anything to have my kids taken from me. I don't think I deserve this.

R.A. testified on cross-examination by the state:

> Because [the ex-boyfriend]…we'd gotten into an argument the night before and the next day, I never hit him, but I got arrested for domestic battery. I never touched him. I never, I never once touched him but I got arrested and I had to, after the four nights when I got out that's when I learned that [L.A.] was with [the ex-boyfriend's] parents. They were now his foster parents. Which is my ex; that has no biological relations to my son and they all hate me and I have restraining orders with me.

At the conclusion of the hearing, the trial court stated:

> Alright. Well, curious to me that whoever diagno…, uh, described her as being manipulative was right on. Um, all of the testimony is self-serving and without using any negative aspects it's … she says it's somebody else's fault[]. Um, I accept the testimony of Ms. [Tabitha] Guillory as being persuasive and satisfactory.

6

The matter was scheduled for a disposition hearing on August 10, 2022.

*September 13, 2022 Dispositional Hearing*

Tasha Davis, a DCFS employee, testified that L.A. should remain in the state's custody. She testified that part of R.A.'s case plan is that she receive mental health treatment. On May 6, 2022, a referral was sent to Ville Platte Mental Health. On May 24, 2022, R.A. completed the assessment. DCFS received a report on May 31, 2022, stating that R.A. did not provide enough information to make an assessment or diagnosis. However, R.A. completed an assessment with Biltmore Mental Health on February 1, 2022, diagnosing her with major depression and generalized anxiety. Davis said that DCFS submitted a referral to Biltmore for services to be reinstated but R.A. has failed to complete the intake. In the remainder of her brief testimony, Davis stated that R.A.'s case plans involved random drug screens which were negative except for prescribed Adderall, six weeks of parenting classes that R.A. did not attend, acquire stable housing which is yet to be determined because R.A. rents two of three bedrooms in a house owned by someone else, proof of employment (R.A.'s last known workplace ended in June 2022), complete domestic violence classes which R.A. had yet to do, and visit L.A. (R.A.'s last visit was on June 25, 2022). Davis said that the agency would like to continue working with R.A. and attempt to assist her with her case plan to achieve the permanent goal of reunification.

R.A. essentially testified that she did not know why L.A. was taken from her and "was there any option that I can follow the case plan and be under investigation and get my son back? Why can't? I'm his mother and he needs his mother." She further stated she did not feel comfortable going to the visitations because her ex-boyfriend's parents have her child, and she's afraid of them because of restraining orders. R.A.'s testimony seemed to be that she was willing to work the plan if L.A. was returned to her custody rather than the ex-boyfriend's parents. She continued

7

to inquire as to why L.A. was taken, but not her other child. The trial court said that matter was not before it; that it had been determined by the East Baton Rouge Parish court. However, the trial court explained the reasons for removing L.A. from her care. The trial court reiterated that she had to follow the case plan or the goal would be changed to adoption, and she would lose her parental rights.

*Child In Need of Care*

In order for L.A. to be adjudicated a child in need of care, an element of La.Ch.Code art. 606 must have been proven by a preponderance of the evidence. Louisiana Children's Code Article 634 requires that a petition to adjudicate a child in need of care set forth "facts that show a child is a child in need of care, including the acts or omissions of either parent which caused or contributed to the child's condition." The petition filed in the Nineteenth Judicial District Court set forth the facts alleged in the instanter order, particularly that R.A. sent texts to her friends stating that she was going to kill herself and harm her children and that she admitted slamming L.A. into his pack and play because he would not stop crying; that R.A. was referred for mental heath assessment and treatment but did not complete weekly counseling sessions due to non-compliance; that R.A. submit to random drug screens; that R.A. failed to submit to unannounced home visits; and the April 15, 2022 arrest for domestic abuse battery.

The issue here is whether R.A.'s arrest during a time that DCFS was already involved in providing services to her for allegations warranting the state's involvement sufficed to adjudicate L.A. as being in need of care. We find that it does. R.A. notes that the trial court did not elaborate as to the reasons under La.Ch.Code art. 606 for adjudicating L.A. a child in need of care. However, the original instanter order alleged neglect/dependency and lack of supervision. Louisiana Children's Code art. 603(18) defines neglect as (emphasis added):

8

(18) "Neglect" means the refusal or *unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care*, treatment, or counseling for any injury, illness, or condition of the child, as a result of which the child's physical, mental, or emotional health, welfare, and safety is substantially threatened or impaired. Neglect includes prenatal neglect. Consistent with Article 606(B), the inability of a parent or caretaker to provide for a child due to inadequate financial resources shall not, for that reason alone, be considered neglect. Whenever, in lieu of medical care, a child is being provided treatment in accordance with the tenets of a well-recognized religious method of healing that has a reasonable, proven record of success, the child shall not, for that reason alone, be considered to be neglected or maltreated. However, nothing in this Subparagraph shall prohibit the court from ordering medical services for the child when there is substantial risk of harm to the child's health, welfare, or safety.

A parent cannot provide food, clothing, shelter, care, or supervision while they are imprisoned. Being unable to care for your child when you have been arrested due to a domestic abuse violence charge suffices as neglect when combined with the basis the state has for already providing services even if the child had not yet been removed. The only reason we find questionable is substance abuse. There were assorted allegations in the instanter order related to the substance abuse that were not addressed at the adjudication hearing. Even if we disregard substance abuse/dependency as a ground since it appears the only medication R.A. tested positive for was prescribed Adderall, we find the requirements of the statute are still met.

It is true that L.A. was already at T.C. and T.C.'s home visiting for a few days when the arrest took place. Thus, L.A. was not taken into custody simultaneously with the arrest; only after DCFS was informed of the arrest did L.A. come into state's custody and remain in the home that he was already in. However, it is not DCFS's duty to monitor when a parent will be released from jail. Coupled with the testimony at the adjudication hearing by DCFS workers and the trial court's finding that R.A.'s testimony was not credible, we find no manifest error that the adjudication of L.A. as a child in need of care was warranted.

9

*Evidence*

In her second assignment of error, R.A. complains the trial court erred in allowing evidence that there was a bench warrant for her arrest for failing to appear relating to the domestic abuse violence charge. The rules relating to the admission of evidence applicable in all civil proceedings apply to adjudication hearings. La.Ch.Code art. 663. The trial court has vast discretion in allowing or excluding evidence and in determining whether evidence is relevant. *Gold, Weems, Bruser, Sues & Rundell v. Granger*, 06-859 (La.App. 3 Cir. 12/29/06), 947 So.2d 835, *writ denied,* 07-421 (La. 4/27/07), 955 So.2d 687. We find no clear error or abuse of discretion by the trial court in allowing R.A. to be questioned about the bench warrant. This assignment of error is without merit.

Further, while not relevant to our determination regarding the initial adjudication, we admonish R.A. to heed the trial court's warnings regarding taking her case plan seriously. Whether one agrees with it or not, failure to follow it can and will result in the termination of parental rights.

## CONCLUSION

The trial court's adjudication of L.A. as a child in need of care is affirmed.

**AFFIRMED**.